**Dennis W. Percell**, Oregon State Bar No. 75297
dpercell@agsprp.com
**Erin E. Gould**, Oregon State Bar No. 103935
egould@agsprp.com
ARNOLD GALLAGHER, P.C.
800 Willamette Street, Ste. 800
Eugene, Oregon 97401
Phone: (541) 484-0188
Fax: (541) 484-0536

**Alex C. Johnson, Jr.**, Oregon State Bar No. 782588
alex.johnson@techlaw.com
**Kelly R. Lusk**, Oregon State Bar No. 136277
kelly.lusk@techlaw.com
MARGER JOHNSON & McCOLLOM, P.C.
210 SW Morrison Street, Ste. 400
Portland, Oregon  97204
Phone: (503) 222-3613
Fax:    (503) 274-4622

**Attorneys for Eclectic Products, Inc.**

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| **ECLECTIC PRODUCTS, INC.**, an Oregon domestic business corporation, **Plaintiff,** <br><br> v. <br><br> **PAINTERS PRODUCTS, INC.**, a California domestic business corporation, **Defendant**. | Case No. 6:13-cv-02181-AA <br><br> **PLAINTIFF ECLECTIC PRODUCTS' OPENING CLAIM CONSTRUCTION BRIEF** <br><br> **(Oral Argument Requested)** |

## PLAINTIFF ECLECTIC PRODUCTS' OPENING CLAIM CONSTRUCTION BRIEF

Plaintiff Eclectic Products, Inc. ("Plaintiff" or "Eclectic Products") hereby submits its Opening Claim Construction Brief regarding United States Design Patent No. D482,962 ("the '962 Patent") (Exhibit A, the '962 Patent; *see also* Lusk Declaration at ¶ 2).

### I.  Introduction

The '962 Patent is titled "Applicator Cap," was issued on December 2, 2003, names Kurt Koptis as the inventor, and is assigned to Defendant Painters Products, Inc. ("Defendant" or "Painter Products"). The '962 Patent was filed November 6, 2002 and does not claim priority to any earlier applications.  The sole claim of the '962 Patent claims the following: "The ornamental design for an applicator cap, as shown and described."[1]

The '962 Patent has six figures, reproduced below:



| FIG. 1 | FIG. 2 | FIG. 3 |
| Front View | Left Side View | Rear View |

---

[1] *See Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (stating that "design patents 'typically are claimed as shown in drawings'") (quoting *Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1319 (Fed. Cir. 2007)).

{00133820;1}
2-Plaintiff Eclectic Products' Opening
Construction Brief



FIG. 4

Right Side View

FIG. 5

Top Plan View

FIG. 6

Bottom Plan View

(Exhibit A, the '962 Patent, Figures 1-6).

While some design patent cases do not require explanation of what the design patent claim and drawings mean, this is not one of those cases. Although the parties have not exchanged proposed claim constructions, presumably, Defendant will contend that the '962 is valid, whereas as shown by Plaintiff below, the '962 Patent is invalid for indefiniteness under 35 U.S.C. §112. Specifically, the '962 Patent is invalid since one skilled in the art would be unable to discern what is being claimed after reviewing the claim and drawings and thus does not meet the standards of 35 U.S.C. § 112.

Further, even assuming arguendo that the '962 Patent is valid, the '962 Patent must be construed for the Court to proceed to a determination of non-infringement. In order to compare Plaintiff's product against the '962 Patent, it must be clear what monopoly is granted to Defendant by the '962 Patent. Does the '962 Patent protect only the top part of the container? Does the '962 Patent cover the entire tube dispenser? Only the "applicator cap"? For these

reasons, the scope of the claim must be clarified for the parties to determine whether Plaintiff's product is non-infringing. Such legal issues regarding claim scope can, and should, be resolved by the Court on claim construction. *See Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 680 (Fed. Cir. 2008); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008).

In summary and as described in detail below, Plaintiff's primary position for purposes of claim construction is that the '962 Patent cannot be construed under any colorable argument as the law requires that the '962 Patent to precisely define the patented invention. Alternatively, without waiving Plaintiff's indefiniteness arguments, Plaintiff proposes that the '962 Patent should be construed to limit it to that which is claimed.

## II. General Principles of Design Patent Law

United States Code, Title 35, Section 171 grants design patent protection to "[w]hoever invents any new, original and ornamental design for an article of manufacture" subject to the conditions and requirements of 35 U.S.C. §§ 1 *et seq.*

As demonstrated by the statutory language quoted above, design patents are by their nature narrow in scope and protect only the novel, non-functional aspects of the ornamental design as shown in the drawings of the patent. *See Oddzon Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997); *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed. Cir. 1995); *In re Mann,* 861 F.2d 1581, 1583 (Fed. Cir. 1988).[2] Unlike utility patents, design patents do not protect functional elements of a product. *See Oddzon,* 122 F.3d at 1405. Indeed, design patents have almost no scope. *In re Mann,* 861 F.2d at 1582 (Fed. Cir. 1988). As with utility patents, determining whether an accused product infringes a design patent involves two steps.

---

[2] Plaintiff expressly reserves the right to argue in later pleadings that the '962 Patent is invalid for failing to meet
{00133820;1}
4-Plaintiff Eclectic Products' Opening
Construction Brief

*See Catalina Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Contessa Food Prods., Inc.,* 282 F.3d at 1376. First, the Court must construe the patent claim to determine its meaning and scope as a matter of law. *See Catalina,* 295 F.3d at 1286. Second, the construed design claim is compared to the accused product to determine whether there is infringement.

### III. Claim Construction of Design Patents

In claim construction, the role of the district court is to determine the scope of the claim and define its metes and bounds. *See Zenith Labs., Inc. v. Bristol-Meyers Squibb Co.,* 19 F.3d 1418, 1424 (Fed. Cir. 1994). The words of a claim are generally to be given "their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Starhome GmbH v. AT&T Mobility LLC,* 743 F.3d 849, 856 (Fed. Cir. 2014) (citation omitted). "The specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 711 F.3d 1348, 1361 (Fed. Cir. 2013) (citation omitted). Although courts use the specification "to interpret the meaning of a claim," at the same time courts must "avoid the danger of reading limitations from the specification into the claim" itself. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1321 (Fed. Cir. 2005). A patentee may "disavow[] the full scope of a claim term either in the specification or during prosecution." *Starhome,* 743 F.3d at 856 (citation omitted).

The construction of design patents presents a special challenge to courts, as "[d]esign patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting." *Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294, 1302 (Fed. Cir. 2010). However, the terms of the title and claim of design patents are not meaningless. The title and

---

these as well as other requirements of the United States Patent Act, including but not limited to for lack of novelty.
{00133820;1}

claim identify the invention and the article in which the design is embodied. *See* the Manual of

Patent Examining Procedure ("M.P.E.P.") § 1503. In *Egyptian Goddess*, the Federal Circuit

reemphasized that the district court is not required to attempt to provide a detailed verbal

description of the claimed design, as is typically done in the case of utility patents. *See Egyptian*

*Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 671 (Fed. Cir. 2008) (*en banc*) (citing *Contessa Food*

*Prods. v. Conagra,* 282 F.3d 1370, 1376 (Fed. Cir. 2002)). Nevertheless, the Federal Circuit

acknowledged some scenarios where design patent claim construction would be helpful for a

jury or in some cases *must* be conducted: *See Egyptian Goddess,* 543 F.3d 665, 671 (Fed. Cir.

2008). "When the parties present a fundamental dispute regarding the scope of a claim term, it is

the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d

1351, 1362 (Fed. Cir. 2008). It is at the discretion of the Court to determine the level of detail

when describing the design embodied in the '962 Patent. *See Egyptian Goddess,* 543 F.3d at 679-

80 ("[A] district court's decision regarding the level of detail to be used in describing the claimed

design is a matter within the court's discretion, and absent showing of prejudice, the court's

decision to issue a relatively detailed claim construction will not be reversible error."; finding no

error with court's discretion to articulate a detailed verbal construction).

The ambiguity between the title, claim and drawings of the '962 Patent necessitate the

construction, if possible, of the '962 Patent claim. Consistent with the Federal Circuit's caution

against detailed verbal claim constructions of design patents, Plaintiff does not propose a detailed

explanation of the '962 Patent's claim and drawings. Rather, Plaintiff proposes the following

possible approaches to the construction of the '962 Patent: (1) that the '962 is invalid for

indefiniteness as it does not particularly point out and distinctly claim the invention or (2) that

the claim be limited to either (a) the top portion of the tube dispenser or (b) the entire tube

dispenser as shown in the drawings, or (c) the "applicator cap" as literally claimed.  If the Court

determines that the claim must be limited to the upper portion of the tube dispenser, Plaintiff has

demonstrated below in Section VI that the '962 Patent does not contain any protectable novel,

ornamental elements.[3]

### IV. The '962 Patent is Invalid for Indefiniteness Because It Does Not Particularly Point Out and Distinctly Claim The Invention

First and foremost, Plaintiff contends that the '962 Patent is invalid for indefiniteness and

thus not properly construable under 35 U.S.C. § 112.  In order to be valid, a patent claim must

"conclude with one or more claims particularly pointing out and distinctly claiming the subject

matter which the applicant regards as [the] invention." 35 U.S.C. § 112 (2006).  Design patents

are subject to the requirements of 35 U.S.C. § 112.  *See Antonious v. Spalding & Evenflo Cos.,*

No. 98-1478, 1999 WL 777450, at *7 (Fed. Cir. Aug. 31, 1999) (unpublished opinion).

Indefiniteness and enablement are questions of law for the Court to decide. *See id.*; *Sitrick v.*

*Dreamworks, LLC,* 516 F.3d 993, 999 (Fed. Cir. 2008).

Design patent drawings must be clear and complete, leaving nothing to conjecture.  *See*

MPEP § 1503.02.  If, after viewing the design patent, one skilled in the art would be required to

speculate as to the boundaries of the claim, the claim is ambiguous and invalid for indefiniteness.

*See Young v. Lumenis, Inc.,* 492 F.3d 1336, 1346 (Fed. Cir. 2007); *see also Seek Lighting Design*

*Co. v. Home Depot,* No. C 04-2291 SBA, 2005 WL 1868152, at *8 (N.D. Cal. Aug. 3, 2005)

(finding inconsistencies in the drawings of a lamp so ambiguous that one skilled in the art would

not be able to understand the scope of the claim).  Lowering the previous "insolubly ambiguous"

standard, the Supreme Court recently held that a claim fails to satisfy this statutory requirement

---

[3] Plaintiff reserves the right to demonstrate functionality and lack of novelty of the tube dispenser if the Court construes the claim to cover the entire container depicted in the drawings.
{00133820;1}

7-Plaintiff Eclectic Products' Opening
Construction Brief

and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonably certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2124 (2014).  The '962 Patent is invalid for indefiniteness because it does not clearly and unambiguously identify what and how much of the tube dispenser is being claimed.

> A. *The Title, Claim and Drawings of the '962 Patent Do Not Depict and Claim a Single, Discernable Design*

In order to construe the '962 Patent under 35 U.S.C. § 112, one skilled in the art would review the '962 Patent in its entirety: the title, the claim, and the drawings.  Although the drawings are primary when construing a design patent, they are not the sole determinant of the claimed subject matter as the claim is directed literally to "an applicator cap, as shown and described" in the drawings.  Thus, the term, "applicator cap," must be construed to determine what exactly is claimed in the '962 Patent.

As demonstrated below, the drawings of the '962 Patent do not depict an "applicator cap" under the plain meaning of the term or as understood in the relevant art.  Rather, the drawings in the '962 Patent depict different perspectives of a tube dispenser as a whole without regard to its individual elements.  Thus after a review of the claim, title, and drawings, one skilled in the art would be unable to decipher what is claimed in the '962 Patent.

As with all design patents, the '962 Patent's claim, "applicator cap, as shown and described," incorporates the drawings through the phrase, "as shown and described," to define the metes and bounds of the invention.  In all patents, including utility and design patents, the claim defines what the "inventor regards as his invention" and must do so with "sufficient particularity and distinctness" as the claim defines the invention's metes and bounds. *See Allen*

*Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed.Cir.2002) (internal quotes omitted) (quoting *Solomon v. Kimberly–Clark Corp.*, 216 F.3d 1372, 1377 (Fed.Cir.2000)). Thus, "applicator cap" must be construed to determine the claimed design of the '962 Patent.

When construing claims, a court must begin by "look[ing] to the words of the claims themselves ... to define the scope of the patented invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The task of comprehending those words is not always a difficult one. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. If the court finds that a term is not readily discernable, "[d]ictionaries, encyclopedias and treatises, publicly available at the time the patent is issued, are objective resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims by those of skill in the art." *Texas Digital Systems Inc. v. Telegenix Inc.*, 308 F.3d 1193, 1202-03 (Fed. Cir. 2002).

The meaning of "applicator cap" would ordinarily be understood by one skilled in the art to have a definition that is apparent to even a layman. Webster's Third New International Dictionary defines "cap" to mean "a covering for the head typically fairly tight-fitting, brimless, and relatively simple." (Exhibit B, Webster's Third New International Dictionary; *see also* Exhibit 1, Declaration of Lusk, at ¶ 3).[4] Webster further provides the following figure with the definition of "cap," which depicts the top, covering instrumentation enclosing the contents of that which it covers:

---

[4] While Webster provides other definitions of "cap," none of the other definitions align with the drawings shown in

{00133820;1}

9-Plaintiff Eclectic Products' Opening
Construction Brief



*See id.* However, in the context of the specification of the '962 Patent, "applicator cap" cannot be construed as such since the drawings do not depict any type of "covering" in solid lines or otherwise.

This definition of "applicator cap" is equally applicable to the relevant art. Specifically, the inventor of the '962 Patent, Mr. Kurtis Koptis, has a now-expired design patent directed to substantially the same invention. United States Design Patent No. D351,338 entitled "Tube Dispenser" actually depicts what one skilled in the art would understand to be an "applicator cap," specifically a covering over the top of the tube dispenser:

the '962 Patent.
{00133820;1}
10-Plaintiff Eclectic Products' Opening
Construction Brief



*FIG. 2*

(Exhibit C, the '338 Patent, Figure 2; *see also* Exhibit 1, Lusk Declaration at ¶ 4) (emphasis added).

In direct contrast, the '962 Patent drawings depict the same tube dispenser as the '338 Patent without an "applicator cap," as shown in Figure 1 below:



*FIG. 1*

(Exhibit A, the '962 Patent, Figure 1).  In fact, the only notable differences between the '962 Patent and the '338 Patent is (1) the "applicator cap" is completely absent in the '962 Patent

despite being claimed and (2) the '962 Patent has threading around the neck, presumably for receiving such a "cap," which would be functional, not ornamental and therefore not protectable under the design patent regime. (*See* Exhibit A, the '962 Patent, and Exhibit B, the '338 Patent).[5]

In order to be a construable valid patent, the '962 Patent must have properly claimed that which was depicted in the drawings. While an applicant is permitted to claim only a portion of the article of manufacture, the drawings must accurately depict that portion which is claimed. *See In re Zahn*, 617 F.2d 261, 268 (C.C.P.A. 1980) (explaining the difference between the article being illustrated and the parts of the article which embody the claimed design). Specifically, the ornamental design which is being claimed must be shown in solid lines in the drawing. See *In re Blum*, 374 F.2d 904, 153 USPQ 177 (CCPA 1967) and *In re Zahn*, 617 F.2d 261, 204 USPQ 988 (CCPA 1980). If the inventor of the '962 Patent intended to only claim the "applicator cap," then the drawings must have depicted only the "applicator cap" in solid lines and the remainder of the tube dispenser in dashed lines.

In this case, the claimed portion, the "applicator cap," would first need to be (1) present in the drawings (which it is not) and (2) further depicted in solid lines according to the dictates of design patent drawing conventions. However, this is not the case. An "applicator cap" is missing, and the entire tube dispenser is shown in solid lines. Under any reasonable definition of "applicator cap," one skilled in the art would not conclude that the '962 drawings of the entire tube dispenser show an "applicator cap." Thus, the claim and the drawings cannot be aligned to discern what exactly is being claimed and therefore do not provide proper notice to one skilled in

---

[5] The '962 Patent is further invalid for lack of novelty for at least the reason that the '338 Patent and the '962 Patent are identical with the exception of functional elements. Plaintiff reserves the right to argue '962 Patent is not new and lacks any protectable, novel features.

{00133820;1}

the art as to what is being claimed. Further, as detailed below, the title fails to cure the noted deficiencies of the '962 Patent.

As with the drawings, the claim must also be construed in the context of the title. While titles are not limiting, the title of the '962 Patent must be consulted in order to properly construe the patent and determine the scope of the '962 Patent's coverage. According to the M.P.E.P. § 1503.01, the title of design patent defines the "article of manufacture" within which the design is embodied. The M.P.E.P. requires the title to identify "the article in which the design is embodied by the name generally known and used by the public…" M.P.E.P. § 1503.01. The title provides notice to the public to the nature and use of the article embodying the design. *See id.* "However, the title may not be directed to less than the claimed design shown in full lines in the drawings…" MPEP § 1503.01.

The '962 Patent title violates the requirements of basic design patent claiming. *See* MPEP § 1503.01. Like the claim, the title of the '962 Patent, "Applicator Cap," is directed to less than the entire tube shown in solid lines. Rather than providing clarification as to the meaning of the claimed design, the title further renders the '962 Patent not amenable to construction.

Since the '962 Patent cannot be construed, it is invalid for indefiniteness: "A patent is invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S.Ct. 2120, 2130 (2014). "It cannot be sufficient that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application…" *Id.* The claim must provide the proper public-notice function as to the invention's metes and bounds and prevent uncertainty that would hamper innovation. *See id.* Therefore, the claim must provide

precise notice as to the scope of the invention and be subject to a construction that would provide such precision.

Within the context of the specification, including the drawings and the title, Plaintiff respectfully submits that the claim of the '962 Patent cannot be construed.[6]

## V. Alternative Claim Construction of the '962 Patent

In the event that the Court finds the '962 Patent to be construable, the '962 Patent may be construed in one of two ways: (1) the claim is limited to the top portion of the dispenser as depicted in the drawings or (2) the entire tube dispenser as shown in the drawings.

As mentioned previously, the '962 Patent is titled "Applicator Cap," and the sole claim of the '962 Patent is also directed to an "applicator cap": "The ornamental design for an *applicator cap*, as shown and described" (emphasis added). However, the drawings of the '962 Patent do not depict an "applicator cap" but instead show different views of a tube dispenser in its entirety. Since the claim is only directed to an "applicator cap," Painters Product is only entitled to that which is claimed, an "applicator cap," which cannot under any reasonable construction be the entire tube dispenser. While Plaintiff is of the firm belief the '962 Patent cannot be construed, in the alternative, Plaintiff proposes the following definition as limited by the claim of the '962 Patent to the top portion of the drawings: "The ornamental design for an applicator cap as shown and described in the following figures:"

---

[6] Plaintiff reserves the right to argue the '962 Patent is indefinite and non-enabling within the meaning of 35 U.S.C. § 112. "[I]f a description in the specification refers to embodiments or modified forms not shown in the drawing...the claim should be rejected under 35 U.S.C. 112(a) and (b), as nonenabling and indefinite." M.P.E.P. § 1503.



(*See* Exhibit A, the '962 Patent, top portion of Figures 1-6).   Thus, Plaintiff proposes, in the

alternative, that the Court limit the '962 Patent to only the top portion of the tube dispenser as

shown in the above-amended figures extracted from the '962 Patent.

### VI.   Under Plaintiff's Proposed Alternative Construction, the '962 Patent Only Has Functional Elements and No Protectable Ornamental Features

A Court is further permitted under the claim construction stage of the proceedings to

determine which elements of the claimed design are protectable as ornamental from the

unprotectable, functional elements of the design. The Federal Circuit stipulated that when a

design patent contains both functional and non-functional features a district court *must* conduct

claim interpretation to distinguish between those features of the claimed design that are

ornamental and those that are functional. *Egyptian Goddess,* 543 F.3d at 680 (emphasis added)

(citing *Oddzon*, 122 F.3d at 1405); *see also* 35 U.S.C. § 171 ("Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."). The exact stage of the litigation at which this determination is made is up to the court, whether at the claim construction phase or after the claim has been construed. Once the court makes such a determination, "[i]f the patented design is primarily functional rather than ornamental, the patent is invalid." *Egyptian Goddess,* 543 F.3d at 1293. "However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article." *Id.* at 1293.

When deciding whether a design is functional or ornamental, the Federal Circuit stipulates "the design of a useful article is deemed functional where 'the appearance of the claimed design is 'dictated by' the use or purpose of the article.'" *L.A. Gear, Inc. v. Thom McAnn Shoe Co.,* 988 F.2d 1117, 1123 (Fed. Cir. 1993). As noted previously, the '962 Patent's claim is directed only to the "applicator cap." Therefore, while case law requires an analysis of the "overall design," the "overall design" in this case of the '962 Patent is solely the applicator cap.[7] *See Berry Sterling Corp. v. Pescor Plastics, Inc.* 122 F.3d 1452, 1455 (Fed Cir. 1997). The Federal Circuit noted the following are appropriate considerations when deciding if alternative designs exist: "whether the protected design is the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or overall appearance clearly not dictated by

---

[7] "[A] design for an article of manufacture may be embodied in less than all of an article of manufacture..." *Best Lock Corp. v. Ilco Unican Corp.,* 94 F.3d 1563, 1566 n. 2 (Fed. Cir. 1996), *citing In re Zahn,* 617 F.2d 261, 267 (CCPA 1980).
{00133820;1}

16-Plaintiff Eclectic Products' Opening
Construction Brief

function." *Berry Sterling Corp.,* 122 F.3d at 1455 (Fed Cir. 1997).

The threads on the neck are functional since the design is dictated by considerations of functionality. The threading shown in the '962 was selected for its ability to more securely hold a cap in place when applied to the tube dispenser while at the same time not being too difficult for the user to remove. Smaller and/or less threads would impact the ability of the cap to stay in place whereas too many and/or bigger threads will affect the user's ability to secure and/or remove the cap. Thus, there is a direct correlation between the threading and the utility of the applicator cap. The inventor of the '962 Patent described in his previous utility patent, United States Patent No. 5,577,851 ("the '851 Patent"), the functional importance of securing a cap to the top of the tube: "The present invention therefore provides for a simple structure which completely seals the contents of the tube dispenser before use, and allows for resealing of the assembly if the contents are only partially used. This is accomplished using a simple and inexpensive cover member which seals directly onto an upper circumferential portion of the tube dispenser." (Exhibit F, the '851 Patent, Col. 2, ll. 38-44).

Inventor, Kurt Koptis, admitted that the angled feature of the sponge is merely functional in nature. "The sponge applicator has a specific angle design to facilitate the application of the paste material, such as a spackle compound…" *Id.* at Col. 2, ll. 12-16. In advertising for this product, the marketing touted the angled nature of the applicator sponge:



The washable, angled tip allows for quick smoothing to match the texture of the wall being repaired, whether it's wood, stucco, wallboard or plaster.

(Exhibit D, Painter's Nail Hole Filler Advertisement, August 1998; *see also* Exhibit 1, Lusk Declaration at ¶ 5).

Finally, the hole located in the center of the applicator is likewise dictated by function. The hole allows the contents of the tube to be dispersed on the center of the applicator for application to a surface. In a 1997 advertisement for Painter's Nail Hole Filler, the functionality of the central location of the hole is illustrated:



(Exhibit E, Painter's Nail Hole Filler Advertisement, 1997; *see also* Exhibit 1, Lusk Declaration at ¶ 6). Further, if the hole were off center, the tube contents, which is a viscous material, would be less easily squeezed out of the container. Therefore, if the hole was located at any other location on the applicator, the ability of the tube contents to be squeezed out and evenly distributed would be negatively impacted.

Therefore, Plaintiff contends that the entire design of the '962 Patent is functional and should be construed as such.

## VII.    Conclusion

Plaintiff is not requesting the Court to provide a detailed verbal claim construction of the '962 Patent.  Rather, the '962 Patent must only be construed to the degree necessary to determine what new and ornamental design is actually being claimed.  As argued above, the '962 Patent is not amenable to construction due to its internal ambiguity and conflicts. One skilled in the art would not be able to discern with any specificity what is claimed in the '962 Patent.

In the alternative and without waiving its indefiniteness and functionality arguments, Plaintiff proposes the following construction of the '962 Patent claim: "The design for the top portion of the tube dispenser with threading located on the neck and an angled applicator sponge with a hole located in the center of the applicator, as shown and described in the pictures" as depicted below:





Dated this 21st day of November, 2014.

Respectfully submitted,

**Alex C. Johnson, Jr.**, Oregon State Bar No. 782588
alex.johnson@techlaw.com
**Kelly R. Lusk**, Oregon State Bar No. 136277
kelly.lusk@techlaw.com
MARGER JOHNSON & McCOLLOM, P.C.
210 SW Morrison Street, Ste. 400
Portland, Oregon  97204
Phone:  (503) 222-3613
Fax: (503) 274-4622

CERTIFICATE OF SERVICE

On November 21, 2014, I electronically submitted the foregoing **PLAINTIFF'S**

**ECLECTIC PRODUCTS' OPENING CONSTRUCTION BRIEF** with the Clerk of Court for

the U.S. District Court, District of Oregon, using the electronic case filing system of the court. I

further certify that I have served defendant's counsel, listed below, by a manner authorized by

Fed. R. Civ. P. 5(b)(2).

> **James C. Chaney**
> The Chaney Firm, LLC
> 777 High Street, Suite 280
> Eugene, OR 97401

                                    __/Kelly R. Lusk/_____
                                    Kelly R. Lusk