**James C. Chaney**, OSB No. 911915
jchaney@thechaneyfirm.com
The Chaney Firm LLC
777 High Street, Suite 280
Eugene, Oregon 97401
Phone: (541) 683-3800
Fax: (541) 683-3802

Attorneys for Painters Products, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| ECLECTIC PRODUCTS, INC., an Oregon domestic business corporation,<br>**Plaintiff,**<br><br>v.<br><br>**PAINTERS PRODUCTS, INC.**, a California domestic business corporation,<br>**Defendant.** | Case No. 6:13-cv-02181-AA<br><br>**PAINTERS PRODUCTS, INC.,'s CLAIM CONSTRUCTION BRIEF** |

**PAINTERS PRODUCTS, INC.'S CLAIM CONSTRUCTION BRIEF**

# Table of Contents

**NATURE AND STAGE OF THE PROCEEDING**..................................................................1

**SUMMARY OF THE ARGUMENT**.......................................................................................1

**STATEMENT OF FACTS**......................................................................................................1

**LEGAL DISCUSSION**...........................................................................................................3

      A.  General Principles of Claim Construction...............................................................3

           1.  The Specification Is The "Single Best Guide" To Claim Construction.........3

           2. Extrinsic Evidence Is Generally "Less Reliable".......................................5

      B. Utility Patents Versus Design Patent...................................................................5

**CONCLUSION**................................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, (Fed. Cir. 1998) (en banc) ………….. 3

*On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331  (Fed. Cir. 2006) ……..... 4

*Phillips v. AWH Corp.*, 415 F.3d 1303, (Fed. Cir. 2005) (en banc) ……………………….. 3, 4, 5

*Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309 (Fed. Cir. 2006 ………. 5

**Statutes**

35 U.S.C. 101 ……………………………………………………………………………..5

35 U.S.C. 102 ……………………………………………………………………………..5

35 U.S.C. 103 …………………………………………………………………………….. 6

35 U.S.C. 171 ……………………………………………………………………………..5

35 U.S.C. 282 …………………………………………………………………………… 3

**Other**

Manual for Patent Examiners, United States Patent Office, Section 1502 ……………………5

## NATURE AND STAGE OF THE PROCEEDING

This litigation commenced in February of this year. An answer has been filed, but discovery is not yet complete; in point of fact, depositions have not yet commenced. No trial date has been set. In addition to this litigation, defendant Painters Products ("Painters ")commenced arbitration in California against plaintiff Eclectic Products ("Eclectic") in 2013, claiming that Eclectic was infringing on its patent, and claiming breach of a licensing agreement under which Eclectic was marketing a product using technology and a brand name owned by Painters; that arbitration was dismissed on procedural grounds in May 2014 due to misconduct of Painters prior counsel. Current counsel is in the course of having that dismissal set aside, so that infringement and breach of contract can be adjudicated in this action as well.

## SUMMARY OF THE ARGUMENT

Plaintiff claims that defendant's patent for the ornamental design of an application cap is invalid, for the various reasons which may include those stated in its preliminary invalidity and non-infringement contentions. Defendant, whose patent is entitled to a presumption of validity under statute, denies this. In addition , it asserts that Eclectic is infringing its patent through the marketing and sale of its GOOP Nail Hole Filler.

## STATEMENT OF FACTS

Kurt Koptis is an inventor, and is the principal of Painters Products Inc. In December 1992 Koptis applied for, and in October 1994 received, design patent D351,338 ("patent '338") for an ornamental tube dispenser. In February 1993 he applied for, and in November 1996 received, Patient Number 5,557,851 ("patent '851") for a tube dispenser with sponge applicator. Both

patents were assigned by Koptis to Painters, and Painters began manufacturing and selling Painters Nail Hole Filler incorporating the patented ideas and technology. Thereafter, in 1996 Eclectic licensed the technology and brand from Painters, and began manufacturing and marketing Painters Nail Hole Filler, paying a 13.98% royalty on sales.

As is discussed in the accompanying declaration of Koptis, through the first few years of the arrangement between Painters and Eclectic, there were problems with the clear plastic protective cap which covered the applicator mechanism for shipping and storage: it fell off when it wasn't supposed to. Originally it snapped on and off; tape was tried to keep it in place, then shrink wrap. Ultimately Koptis conceptualized and designed a screw-on protective cap which engaged threading to be molded into the neck of the product tube. With Eclectic's knowledge and support, he applied for a design patent to protect this idea, helping to ensure that the brand that Eclectic was licensing would be protected for years to come. This design patent (design patent D482,962, hereinafter "the '962 patent") was applied for in November 2002, and issued on December 2, 2003 for a term of 14 years. Eclectic began selling the nail hole filler in the redesigned tubes, placing the new patent number on the packaging.

Problems arose in 2012. The agreement was to last until the expiration of the '851 patent, at which point the agreement was to be renegotiated (keep in mind that it wasn't only the patented technology which was being licensed, but the brand and trade names), or the rights to the brand, trade names would revert to Painters. However, the agreement also provided that if the product was subject to future patents, it would extend until the expiration of that patent or patents. For reasons which aren't entirely clear, Eclectic regarded the agreement as having expired upon the

expiration of the '851 patent, rather than ongoing under the '962 patent. It began manufacturing a nail hole filler product identical in virtually every respect to the Painters Nail Hole Filler which it had sold under license for years, Under the name GOOP Nail Hole Filler.

## LEGAL DISCUSSION

Initially, the following should be made clear:

> **(a) In General.**— A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.  35 U.S. Code § 282

As a result, it is Eclectic's burden to prove invalidity, not Painter's burden to prove validity.

**A. General Principles of Claim Construction**

Claim construction is a matter of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-56 (Fed. Cir. 1998) (en banc). "[T]he claims of a patent define the invention," but "must be read in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-15 (Fed. Cir. 2005) (en banc).

### 1. The Specification Is The "Single Best Guide" To Claim Construction

The Federal Circuit rendered the Phillips decision en banc to resolve the conflict arising from two competing methodologies of claim construction: one heavily premised on the "ordinary meaning" of claim terms as evidenced by "objective resources" such as dictionary definitions; the other giving primary weight to the intrinsic record, wherein claim terms are not to be construed "in the abstract, out of [their] particular context." *Phillips*, 415 F.3d at 1319-24.

The Federal Circuit's focus on determining a construction true to the invention led the court to reject the dictionary-centric methodology in favor of the contextual methodology. *Id.*

As a result, it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims," because the specification "[u]sually is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315-17. The proper construction "can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316.

The claims of a patent cannot be construed more broadly than "the invention that is set forth in the specification." *On Demand Machine Corp. v. Ingram Indus., Inc.,* 442 F.3d 1331, 1340 (Fed. Cir. 2006). While it is inappropriate to limit the claims to "an example of how to practice the invention" described in the specification, it is appropriate to rely on "the manner in which the patentee uses a term within the specification" to determine whether the patentee "intends for the claims and the embodiments in the specification to be strictly coextensive." *Phillips,* 415 F.3d at 1323. In addition, the claims may be limited to an embodiment described in

the specification where there is "nothing in the context to indicate that the patentee contemplated any alternative." *Id.* (citation omitted).

### 2. Extrinsic Evidence Is Generally "Less Reliable"

While extrinsic evidence, including dictionaries, may be useful, the Federal Circuit views "extrinsic evidence in general as less reliable." *Phillips,* 415 F.3d at 1318. As a result, extrinsic evidence should only be considered "in the context of the intrinsic evidence," i.e., the claims, specification, and prosecution history. Id. at 1319; see also *Old Town Canoe Co. v. Confluence Holdings Corp.,* 448 F.3d 1309, 1318 (Fed. Cir. 2006) (patentee "is not entitled to a claim construction divorced from the context of the written description and prosecution history"). That said, extrinsic evidence can be helpful, as it is here.

## B. Utility Patents Versus Design Patents

A utility patent protects function; a design patent protects appearance. As stated in the Manual for Patent Examiners published by the United States Patent Office at Section 1502:

> In general terms, a "utility patent" protects the way an article is used and works (35 U.S.C. 101), while a "design patent" protects the way an article looks (35 U.S.C. 171). The ornamental appearance for an article includes its shape/configuration or surface ornamentation applied to the article, or both. Both design and utility patents may be obtained on an article if invention resides both in its utility and ornamental appearance.
>
> While utility and design patents afford legally separate protection, the utility and ornamentality of an article may not be easily separable. Articles of manufacture may possess both functional and ornamental characteristics.

A design patent may be denied for many reasons, but those which Painters expects may form the subject of Eclectic's attacks include lack of novelty (35 U.S.C. 102); and obviousness

(35 U.S.C. 103). In brief, Painters believed that Eclectic will maintain that there was nothing new, and everything obvious, about adding threads to the clear protective cap. Two points indicate strongly otherwise.

First, the United States Patent Office disagreed during the prosecution of this patent; it issued.

Second, as disclosed in the Koptis affidavit, the parties certainly didn't see this as an obvious solution. They tried to snap the cover on; they tried adding tape; they tried adding shrink wrap. It was only after 6 years of head-scratching while this product was being actively marketed that Koptis developed the solution, and it was implemented.

Painters believes that Eclectic may also maintain that the feature added to the design – the threading – isn't properly the subject of a design patent, but rather (if patentable at all) seeks to protect function, and not appearance, and so should have been applied for and prosecuted under the more stringent standards and process applying to a utility patent. This argument is easily disposed of also.

The function of this product, as a whole, is the delivery and application of spackling compound in a tidy and workmanlike way. The cap is a matter of appearance: how the product appears to the consumer's eye, and how the product reaches the consumer's hand. The adding of a feature to this product to make its appearance more secure isn't a matter of function, but of appearnace.

## CONCLUSION

For the foregoing reasons, Painters Products, Inc., respectfully requests that the Court adopt its constructions of the disputed claims and terms of the asserted patent.

Dated this 1st day of December, 2014.

_____
James C. Chaney, OSB No. 911915
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

On December 1, 2014, I certify that I have served plaintiff, listed below, by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

        Dennis Percell and
        Erin Gould
        Arnold Gallagher Percell Roberts & Potter PC
        800 Willamette Street, Suite 800
        Eugene, OR 97440

        Attorney for Plaintiff

_____
James C. Chaney, OSB#911915
Attorney for Defendant