IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ECLECTIC PRODUCTS, INC., an                  Case No. 6:13-CV-02181-AA
Oregon domestic business                         OPINION AND ORDER
corporation,

       Plaintiff,

   v.

PAINTERS PRODUCTS, INC.,
a California domestic business
corporation,

       Defendant.

_____

Dennis W. Percell,
Erin E. Gould,
Arnold Gallagher, P.C.
800 Willamette Street, Suite 800
Eugene, Oregon 97401

Alex C. Johnson, Jr.
Kelly R. Lusk
Marger Johnson & McCollom, P.C.
210 SW Morrison Street, Suite 400
Portland, Oregon 97204

    Attorneys for plaintiff

James C. Chaney
The Chaney Firm LLC
777 High Street, Suite 280
Eugene, Oregon 97401

    Attorney for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

The Court is called upon to construe a design patent for an applicator cap on a tube dispenser used for spackling paste, U.S. Design Patent D482,962 ("the 962 Patent"). Plaintiff Eclectic Products, Inc. ("Eclectic") brought this action against defendant Painters Products, Inc. ("Painters"), seeking a declaratory judgment as to whether defendant's 962 Patent is valid and enforceable, and whether plaintiff has infringed on it under 35 U.S.C. § 271. In response, Painters asserts its patent is valid and that Eclectic infringed on it. Def.'s Cl. Construction Br. 1. On February 22, 2014, the Court held a claim construction hearing. Based on the parties' briefs, other filings, and oral arguments, the Court holds the design patent invalid for indefiniteness.

## STANDARD

In a patent case, a court first must construe the patent claim before the trier of fact can decide issues of infringement. Markman v. Westview Instruments, Inc., 52 F.3d 967, 970, 977-79 (Fed. Cir. 1995)(en banc). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." Embrex, Inc. v. Service Engineering Corp., 216 F.3d 1343, 1347 (Fed. Cir. 2000) (citation and internal quotation marks omitted). Claim construction is a matter of law, and rules of construction differ depending on whether the case concerns a utility or a design patent. Markman, 52 F.3d at 979; Egyptian

Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008).
Under U.S. patent laws, utility patents cover "new and useful"
inventions while design patents protect only the appearance of
inventions, specifically, "new, original and ornamental design[s]"
for articles of manufacture. 35 U.S.C. §§ 101, 171; see
International Seaway Trading Corp. v. Walgreens Corp., 589 F.3d
1233, 1238 (Fed. Cir. 2009) (contrasting utility patents with
design patents). In design patents, inventors define their claims
with illustrations. 37 C.F.R. § 1.152. Although courts typically
must provide detailed verbal construction of utility patents,
courts are encouraged to forgo that for design patents and rely on
patent illustrations as much as possible. Egyptian Goddess, Inc.
v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008). Both the
Supreme Court and the Patent and Trademark Office have recognized
that a design is better represented by an illustration "than it
could be by any description and a description would probably not be
intelligible without the illustration." Dobson v. Dornan, 118
U.S. 10, 14 (1886); Manual of Patent Examining Procedure § 1503.01
(8th ed. 2006)("as a rule the illustration in the drawing views is
its own best description"). Nonetheless, a court has discretion to
provide verbal elaboration if "necessary or helpful." Egyptian
Goddess, 543 F.3d at 680.

Courts may also determine whether patents are invalid for
indefiniteness as part of their "duty as the construer of patent
claims." Exxon Research & Eng'g Co. v. United States, 265 F.3d
1371, 1376 (Fed. Cir. 2001) abrogated on other grounds by Nautilus,

Page 3 - OPINION AND ORDER

Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120 (2014); ePlus,
Inc. v. Lawson Software, Inc., 700 F.3d 509, 517 (Fed. Cir. 2012)
("indefiniteness is a question of law and in effect part of claim
construction").   Claim construction generally resolves disputes
over the meaning of the patent, but, in some cases, the patent is
"so  lacking  in  clarity  as  to  be  invalid  as  indefinite."
Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n, 161 F.3d
696, 705 (Fed. Cir. 1998).   Because patents are presumed to be
valid, the challenger bears "the evidentiary burden to show facts
supporting a conclusion of invalidity" by "clear and convincing
evidence."  Young v. Lumenis, 492 F.3d 1336, 1344 (Fed. Cir. 2007).

### BACKGROUND

In 1994, Kurtis Koptis received a design patent for a tube
dispenser with a sponge applicator tip and clear plastic cap, U.S.
Design Patent D351,338 ("the 338 Patent"),[1] and two years later,
he obtained a utility patent for the same invention, U.S. Utility
Patent 5,577,851 ("the 851 Patent").[2]  Pl.'s Cl. Construction Br.
Ex. #4, at 2 and Ex. #7, at 2; Def.'s Cl. Construction Br. Ex. #1,
at 3-5.   Koptis assigned patent rights to his company, Painters
Products, and in 1996, Painters entered into an agreement that
gave Eclectic Products "the exclusive license to manufacture,
distribute, market and sell a nail hole filler spackling compound

---

[1]  The complete 338 Patent is attached hereto as Appendix 1.

[2]  The complete 851 Patent is attached hereto as Appendix 2.

using the Dispenser" design and technology and the Painters label.[3]
Compl. 3; Def.'s Cl. Construction Br. Ex. #1, at 3-5.    In
exchange, Eclectic agreed to pay royalties to Painters until at
least the end of the 338 Design Patent's 14-year term.  Id.[4]

Pursuant to the agreement, Eclectic began manufacturing a
"Painters Nail Hole Filler" product that used the patented tube
dispenser design.  Def.'s Cl. Construction Br. 2; Pl.'s Cl.
Construction Br. Ex. #5.  However, Eclectic experienced problems
with the dispenser's clear plastic snap-on cap, which often fell
off during shipping, retailing, and storage.  Def.'s Cl.
Construction Br. Ex. #1, at 5; Def.'s Cl. Construction Br. 2;
Compl. 3.  The parties each claim credit for solving the problem
by replacing the product's snap-on cap with a screw-on cap that
attached via threading on the neck of the applicator tip.  Compl.
3; Def.'s Cl. Construction Br. 2; Def.'s Cl. Construction Br. Ex.
#1, at 5-6.  In 2002, Koptis applied for another design patent
reflecting the change to the dispenser, and Patent 962 issued on

_____

[3]  In his declaration, Koptis explains the invention's
purpose as allowing a user to apply spackling paste directly from
the tube.  Def.'s Cl. Construction Br. Ex. #1, at 4.  When a user
squeezes the tube, "paste is extruded through the hole in the
center of the angled sponge" on the applicator tip.  Id.  "[T]he
flat surface of the sponge allows the paste to be pushed into a
nail hole or other gap in a surface then leveled and smoothed
without the need for any other tools."  Id.

[4]  The parties supply conflicting information about the term
of the licensing agreement.  Compl. 5; Def.'s Cl. Construction
Br. Ex., #1, at 5; Def.'s Cl. Construction Br. 2.  Thus far,
neither party has provided the licensing agreement to clarify the
precise expiration date.

Dec. 2, 2003.[5] Def.'s Cl. Construction Br. Ex. #1, at 5-6; Compl.
4.   Around 2012, after the initial 338 Design Patent had expired,
disputes arose between the parties.  Def.'s Cl. Construction Br.
2; Compl. 5.   Eclectic notified Painters that the licensing
agreement ended with the expiration of the 338 Patent, ceased
making royalty payments, and began manufacturing another product,
"GOOP Nail Hole Filler." Compl. 5; Def.'s Cl. Construction Br. 3;
Def.'s Cl. Construction Br. Ex. #1, at 13.   Painters claimed the
licensing agreement extended until the expiration of the new 962
Design Patent, and not the earlier design patent.  Def.'s Cl.
Construction Br. 3.   On Sept. 5, 2013, Painters initiated an
arbitration proceeding in Riverside County, California, claiming
infringement, breach of contract, misappropriation, fraud, and
other wrongdoing by Eclectic.  Compl. 5, 17.[6]

     On Dec. 11, 2013, Eclectic filed the present complaint,
seeking a declaratory judgment as to whether Painters' 962 Design
Patent is valid and enforceable, and whether Eclectic has
infringed under 35 U.S.C. § 271.  Compl. 8-9.  On Nov. 21, 2014,
Eclectic filed its claim construction brief which asks the Court
to hold the 962 Patent invalid on the grounds of either
indefiniteness or functionality.  Pl.'s Cl. Construction Br. 19.
Alternatively, Eclectic requests that the Court to construe the

---

     [5]   The complete 962 Patent is attached hereto as Appendix 3.

     [6]   In its claim construction brief, Painters stated that the
arbitration was dismissed on procedural grounds in May 2014 and
that Painters was seeking to have the dismissal set aside.
Def.'s Cl. Construction Br. 1.  It is unclear whether Painters
succeeded.

patent to cover only the top portion of the pictured tube dispenser. Id. In its brief, Painters argues the patent is valid and urges the Court to interpret the patent as issued and without limitations. Def.'s Cl. Construction 4-7.

## DISCUSSION

The Court first addresses whether the patent is invalid for indefiniteness. In order to be valid, a patent must include "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. §§ 112(b), 171(c).[7] Recently, the Supreme Court enunciated a new and stricter standard for patent validity, holding that a patent does not satisfy the definiteness requirement merely because "a court can ascribe some meaning to a patent's claims." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2130 (2014). A patent must "inform, with reasonable certainty, those skilled in the [relevant] art about the scope of the invention." Id. at 2124. Otherwise, the patent is invalid. This standard provides "for a modicum of uncertainty" in patent claims to incentivize inventors to innovate, but requires "clear notice of what is claimed, thereby appris[ing] the public of what is still open to them." Id. at 2128, 2129; Interval Licensing LLC

---

[7] The Section 112 standard for definiteness applies to utility and design patents alike. 35 U.S.C. § 171(c). Apple, Inc. v. Samsung Electronics Co., 932 F. Supp. 2d 1076, 1084-85 (N.D. Cal. 2013); Litton Systems, Inc. v. Whirlpool Corp., 728 F.2d 1423, 1440 (Fed. Cir.1984), overruled on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008).

v. AOL, Inc., 766 F.3d 1364, 1370 (Fed. Cir. 2014).  Courts must evaluate definiteness from the perspective of someone skilled in the relevant field and in light of the patent's specification and prosecution history.  Nautilus, 134 S. Ct. At 2128.

The 962 Patent provides a brief verbal description of its claim: "The ornamental design for an applicator cap, as shown and described."  The patent then supplies the following Figures 1-6, showing a front elevational, left side, rear, right, top, and bottom views of the design:



In assessing a patent's definiteness, a court considers first

and foremost intrinsic evidence, which includes the claim language, the specifications, and any prosecution history of the patent in evidence. <u>Young</u>, 492 F.3d at 1346. Courts may also consider extrinsic evidence, "evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," but it has less evidentiary value. <u>Philips v. AWH Corp.</u>, 415 F.3d 1303, 1313, 1315 (Fed. Cir. 2005) (en banc). Here, intrinsic evidence establishes the 962 Patent as fatally indefinite. The words of the patent lay claim to "an applicator cap, as shown," but the drawings depict an entire tube dispenser with a threaded neck and a sponge tip but, notably, no cap that fits over the tube. This conflict between the patent's verbal and visual descriptions creates uncertainty about the claim's meaning. The patent, on its face, fails to provide notice of what is claimed.

Moreover, a closer examination of the verbal portion of the claim does not resolve the ambiguity. In construing words such as "applicator cap," courts generally give them "their ordinary and customary meaning," defined as "how a person of ordinary skill in the art understands a claim term." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Eclectic argues that the ordinary and customary meaning is: "a protective covering fitted over and/or attached to the top of the applicator." Pl.'s Resp. Cl. Construction Br. 9. Painters, on the other hand, does not provide any interpretation of the term "applicator cap," and nothing in the intrinsic record indicates a different meaning. In

fact, the defendants, who presumably possess "ordinary skill" in this field, appear to share Eclectic's interpretation of the term "applicator cap." Painters' claim construction brief repeatedly uses the term "cap" to describe the removable clear plastic covering protecting the dispenser's applicator tip. See, e.g., Def.'s Cl. Construction Br. 2 (mentioning "the clear plastic protective cap which covered the [dispenser's] applicator" and "the screw-on protective cap which engaged threading to be molded into the neck of the product tube"). In an attached declaration, Koptis refers to "the original clear cap which fitted over the applicator end of the product" and states that he added "threading in the neck of the tube to keep the clear protective cap firmly in place." Def.'s Cl. Construction Br. Ex. #1, at 5. The Court concludes that an individual of ordinary skill in the relevant field would interpret "applicator cap" to refer to a protective covering for an applicator. Yet, the patent drawings do not depict anything of the sort. A skilled artisan examining the 962 Patent is left to conjecture what exactly the inventor intended to claim. As such, the Court holds the 962 Patent invalid for indefiniteness. The Court need not reach the issue of functionality or perform further claim construction.

## CONCLUSION

For above reasons, the Court holds the 962 Patent invalid for indefiniteness under 35 U.S.C. § 112(b). Accordingly, the Court ORDERS that the 962 patent be declared invalid and unenforceable and that this action be DISMISSED with prejudice. The clerk is

directed to provide copies of this order to all counsel of record and to enter judgment in plaintiff's favor pursuant to Fed. R. Civ. P. 58.

IT IS SO ORDERED.

Dated this 2ND of March 2015.

Ann Aiken
United States District Judge

US00D351338S

# United States Patent [19]

## Koptis

[11] Patent Number: **Des. 351,338**

[45] Date of Patent: ** Oct. 11, 1994

[54] **TUBE DISPENSER**

[75] Inventor: **Kurt Koptis**, Yucca Valley, Calif.

[73] Assignee: **Painter's Products Inc.**, Palm Desert, Calif.

[**] Term: **14 Years**

[21] Appl. No.: **2,993**

[22] Filed: **Dec. 28, 1992**

[52] U.S. Cl. .................................... D9/302; D9/337; D9/338

[58] Field of Search ............... D9/302, 306, 337, 338, D9/442; 222/92, 93, 106, 107; 401/130, 139; 239/333, 337, 383

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 92,135 | 5/1934 | Johnson | D9/302 |
| D. 129,508 | 9/1941 | Landau | D9/338 X |
| D. 208,174 | 7/1967 | Carveth | D9/338 |
| D. 216,294 | 12/1969 | Rias | D9/526 X |
| D. 308,476 | 6/1990 | Rosenberg | D9/338 |
| D. 322,391 | 12/1991 | Morane | D9/448 X |
| D. 322,392 | 12/1991 | Schneider et al. | D9/300 |
| D. 327,003 | 6/1992 | Schneider et al. | D9/300 |
| 1,342,537 | 6/1920 | Everett | 401/139 |
| 2,532,690 | 12/1950 | Zimmerman | 222/92 |

*Primary Examiner*—Bernard Ansher
*Assistant Examiner*—M. Siegel
*Attorney, Agent, or Firm*—Charles H. Schwartz; Ellsworth R. Roston

[57] **CLAIM**

The ornamental design for a tube dispenser, as shown and described.

**DESCRIPTION**

FIG. 1 is a front perspective view of a tube dispenser showing my new design;
FIG. 2 is a back elevational view thereof;
FIG. 3 is a top plan view thereof;
FIG. 4 is a right side elevational view thereof;
FIG. 5 is a left side elevational view thereof; and,
FIG. 6 is a bottom plan view thereof.



Appendix 1: Page 2 of 3

**U.S. Patent**        Oct. 11, 1994        Sheet 1 of 2        **Des. 351,338**

*FIG. 1*





*FIG. 2*



*FIG. 3*

EXHIBIT _____ B
PAGE _____ 2 __ OF __ 3

**U.S. Patent**        Oct. 11, 1994        Sheet 2 of 2        **Des. 351,338**



FIG. 4

FIG. 5

FIG. 6

US005577851A

# United States Patent [19]

## Koptis

[11] Patent Number: **5,577,851**

[45] Date of Patent: **Nov. 26, 1996**

[54] **TUBE DISPENSER WITH SPONGE APPLICATOR**

[75] Inventor: **Kurt Koptis**, Yucca Valley, Calif.

[73] Assignee: **Painter's Products Inc.**, Palm Desert, Calif.

[21] Appl. No.: **22,077**

[22] Filed: **Feb. 24, 1993**

[51] Int. Cl.$^6$ ..................................................... **B43K 1/00**

[52] U.S. Cl. ........................... **401/202**; 401/207; 401/265; 401/266; 401/183

[58] Field of Search ................................ 401/202, 207, 401/196, 265, 266, 134, 183–6

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,007,492 | 10/1911 | Ruch ........................................ | 401/262 |
| 3,072,953 | 1/1963 | Bunke ..................................... | 401/262 X |
| 3,106,742 | 10/1963 | Schultz et al. ......................... | 401/202 |
| 3,214,780 | 11/1965 | Sharpe ................................... | 401/185 X |
| 3,271,810 | 9/1966 | Raffe ..................................... | 401/266 X |
| 3,756,732 | 9/1973 | Stöffler .................................. | 401/202 |
| 3,797,946 | 3/1974 | Witzmann et al. ..................... | 401/266 X |
| 3,922,099 | 11/1975 | Christine et al. ....................... | 401/134 |
| 4,271,982 | 6/1981 | Niksich et al. ........................ | 401/134 X |
| 4,848,946 | 7/1989 | Goncalves ............................. | 401/183 X |
| 4,887,924 | 12/1989 | Green ..................................... | 401/266 X |
| 5,042,690 | 8/1991 | O'Meara ................................. | 401/134 X |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1124161 | 6/1956 | France ............................... | 401/266 |
| 1411630 | 4/1969 | Germany ............................ | 401/202 |

*Primary Examiner*—Danton D. DeMille
*Attorney, Agent, or Firm*—Charles H. Schwartz; Ellsworth R. Roston

[57] **ABSTRACT**

A tube dispenser, sponge applicator and cover assembly including a tube dispenser having a main body portion, an upper neck portion extending from the main body at an upper end and an upper circumferential portion at the upper end of the main body portion adjacent to the neck portion. A sponge applicator for attachment around the neck portion of the tube dispenser for applying any substance contained in the tube dispenser. A cover member having an upper portion for covering the sponge applicator and the neck portion of the tube dispenser and a lower circumferential portion to mate with and seal to the upper circumferential portion of the main body of the tube dispenser.

**6 Claims, 1 Drawing Sheet**



**U.S. Patent**          Nov. 26, 1996          5,577,851



FIG. 1

FIG. 2

FIG. 3

5,577,851

## 1

### TUBE DISPENSER WITH SPONGE APPLICATOR

### BACKGROUND OF THE INVENTION

The present invention relates to a tube dispenser with sponge applicator and specifically to a tube dispenser with sponge applicator that has a cover member to seal off the contents of the tube dispenser when not in use.

In the prior art, tube dispensers have been known, which serve as containers for a variety of substances. The substance may be dispensed from the container by deforming the container walls so as to force the contents of the container through an aperture at one end of the container. The most common tube dispenser of this type is a tube of toothpaste. In addition, tube dispensers have been provided which include an applicator device mounted around the aperture. When the contents of the tube are dispensed through the aperture, the applicator is then used to apply the contents of the tube to a desired surface.

For example, in the past, structures of the above described type have been used to apply a liquid dressing or polish to leather such as dispensed from in Albert U.S. Pat. No. 2,870,471, Fagan U.S. Pat. No. 3,023,448 and Schultz et al U.S. Pat. No. 3,106,742. Other applicators which have been used in the prior art are again directed to the application of a liquid from the tube container to a surface such as shown in Schwartzman U.S. Pat. No. 3,565,294 and Johnson U.S. Pat. No. 3,811,783.

Hulsh U.S. Pat. No. 3,121,906 shows a similar tube applicator for dispensing and applying the contents of a container which are more viscus than those described in the patents referred to above. Specifically, the Hulsh patent relates to paste and viscus substances such as an oven cleaning composition. The present invention is more generally directed to a tube dispenser with sponge applicator of the type shown in the Hulsh patent in that it is more directly applicable to a paste-like substance and specifically a spackle compound used to fill holes in walls and ceilings prior to painting.

Also in the prior art are various devices used by plasterers to provide for the application of plaster material on a continuous basis such as shown in the Martin U.S. Pat. No. 2,864,109, the Anderson U.S. Pat. No. 2,882,716 and the Etens U.S. Pat. No. 3,368,234. These types of devices are directed to a different area than the present invention since they relate to the spreading of plaster material to much larger areas than would be practical with the present invention.

The devices of the prior art suffer from a number of deficiencies including complexity in construction and difficulty in reusing since the prior art devices are often poorly sealed once they have been opened. For example, the Hulsh patent has a snap-on cover which attaches to a portion of the sponge applicator assembly. Both the cover and sponge applicator are complicated in structure and thereby relatively expensive to produce. In addition, the cover seals so poorly that a separate closure cap must be used to seal off the contents of the tube container once the container has been opened and used.

Many of the other prior art patents include screw type covers which are again more complex in structure and would not provide for a good seal once the tube dispenser has been used. The Schwartzman patent also has a snap-on cap or cover which cooperates with a portion of the applicator

## 2

structure and again is generally complex in construction and thereby expensive.

### SUMMARY OF THE INVENTION

In the present invention a very simple assembly of a tube dispenser, sponge applicator and cover member is provided. Specifically, the tube dispenser does not require any special closure cap, but actually includes a cutoff tip so that prior to cutting off this tip the contents of the tube dispenser are completely sealed and not in any way exposed to the environment. The sponge applicator has a specific angle design to facilitate the application of the paste material, such as a spackle compound, and with the sponge applicator attached to the top of the tube dispenser surrounding a dispensing aperture.

In the particular example shown in the present application, the applicator is attached by a threaded connection to a neck portion at the top of the tube dispenser. Finally, the cover member is very simple in construction and is specifically designed to seal the tube dispenser and sponge applicator by seating onto a circumferential portion at the upper end of the tube dispenser. In the present invention, the cover member does not seal to a portion of the sponge applicator. The cover member is independent of the sponge applicator, and seals around the upper circumferential portion of the tube dispenser itself.

The cover structure is very simple in construction and provides for an air tight seal because of the nature of the materials used for the cover member and the tube dispenser. Specifically, the cover member is made out of a substantially stiff material such as a hard plastic material, while the tube dispenser is made out of a pliable plastic material which is much more flexible than the cover member. When the cover member is positioned around the upper end of the tube dispenser the upper circumferential will deform sufficiently for the cover member to provide for a tight sealing area around the upper end of the tube. The present invention therefore provides for a simple structure which completely seals the contents of the tube dispenser before use, and allows for a resealing of the assembly if the contents are only partially used. This is accomplished using a simple and inexpensive cover member which seals directly onto an upper circumferential portion of the tube dispenser.

### A BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a tube dispenser, sponge applicator and cover assembly of the present invention and with the cover member shown partially broken away to illustrate the sponge applicator;

FIG. 2 is an exploded view of the assembly of FIG. 1 and with the cover member and sponge applicator shown in cross section; and

FIG. 3 is a cross-sectional view taken along lines 3—3 of FIG. 1 in illustrating the sealing of the cover member to an upper circumferential portion of the tube dispenser.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring specifically to FIGS. 1–3, it can be seen that the assembly of the present invention is composed of three inter-related parts. These parts are the squeezable tube dispenser 10, a sponge applicator 12, and a cover member 14. The sponge applicator 12 is shown to be secured to the top of the tube dispenser 10 using a screw thread arrange-

5,577,851

**3**

ment and with the cover 14 covering the top of both the tube dispenser 10 and the sponge applicator 12 by sealing around an upper circumferential portion of the tube container 10.

The tube dispenser 10 includes a main body portion 16 surmounted at the top by a neck portion 18. The neck portion 18 includes a spiral exterior thread 20 and a closed tip portion 22 to provide for a seal of the contents of the main body portion 16 of the tube 10. The closed tip portion 22 may be cut off by a knife to dispense the contents of the tube until the tip 22 is cut off. The contents, such as a spackle compound, are sealed within the tube dispenser 10 and remain fresh and thereby storeable for a considerable period of time.

The sponge applicator 12 includes a lower rigid plastic portion 24 and an upper sponge member 26. The sponge member 26 may be attached to the lower plastic portion 24 such as by an adhesive. The lower portion 24 includes a cylindrical member 28 having a spiral interior thread 30 which mates with the spiral exterior thread 20 of the neck portion 18. It can be seen therefore that the sponge applicator 12 may be threaded onto the top of the tube dispenser 10. Finally, the sponge applicator 12 includes an opening 32 that extends through the sponge portion 26 and the substantially rigid portion 24 so that any contents of the container 10 may be squeezed through the neck 18 and through the opening 32 to be applied by the outer surface 34 of the sponge 26.

The cover member 14 is designed to cover the end of the tube dispenser 10 and the sponge applicator 12 and to reseal the tube dispenser. Specifically, when the end 22 of the neck 18 is cut off, the contents of the container 12 may be dispensed through and applied by the sponge applicator 12. Once the application has been completed then the cover 14 may be reinstalled as shown in FIGS. 1 and 3 so as to seal the upper end of the assembly of the present invention. The tube dispenser with sponge applicator may then be reused at a later time.

The cover 14 has an upper end 36 which covers the sponge applicator 12 and a lower end 38 which forms a rigid ring which is designed to seal against an upper circumferential portion 40 of the main body portion 16 of the tube dispenser 10. As can be seen in the drawings and specifically in FIG. 3, the lower portion 38 overlays and provides a friction fit to the upper circumferential portion 40 of the main body 16 of the tube dispenser 10. The lower end 38 of the cover 14 has a stepped design as shown by step 42 to act as a stop to limit the insertion of the cover 14 on the upper circumferential portion 40.

The container 10 is preferably formed of a relatively pliable plastic material whereas the cover member 14 and specifically the lower portion 38 are preferably formed of a somewhat stiffer material such as a hard plastic. The lower portion 38, which forms the substantially rigid ring, therefore provides a substantially air tight seal to the upper circumferential portion 40 and has a friction fit due to the interrelationship between the relatively pliable and relatively stiff plastic materials.

The applicator sponge 12, and specifically the sponge portion 26, may be formed from a spongy material, such as a foamed plastic material, so as to provide for the proper application of the contents of the tube dispenser 10. One specific material that the present invention is designed for is a spackle compound and with the assembly of the present invention thereby used to apply spackle material to holes or cracks in walls or ceilings and with the sponge applicator 12 then used to smooth off the spackle material to conform to

**4**

the surrounding wall or ceiling and thereby provide a proper surface for painting.

Typically, after the present invention has been used, for example to apply spackle in a desired manner, the sponge assembly 12 may be thoroughly cleaned by flushing with running water so as to clean any excess spackle material out of the sponge material and out of the opening 32. This may be accomplished with the sponge applicator either separated from container 10, or with the sponge applicator still in position as long as excess water does not enter into the tube dispenser 10. Once the sponge applicator 12 has been thoroughly cleaned, then the cover member 14 may be friction fit onto the top of the tube dispenser to have the lower ring portion 38 of the cover 14 engage the upper circumferential portion 40 of the tube 10 as shown in FIGS. 1 and 3.

Although the present has been described with reference to a particular embodiment, it is to be appreciated that various adaptations and modifications may be made and the invention is only to be limited by the appended claims.

I claim:

1. A tube dispenser, sponge applicator and cover assembly wherein the tube dispenser is designed to contain a substance for application to an exterior surface including,

a tube dispenser having a main tubular body portion, an upper neck portion extending inwardly from the upper end of the main tubular body portion for dispensing any substance within the main tubular body portion and a non-threaded upper circumferential portion at the upper end of the main tubular body portion and adjacent to the neck portion,

said upper circumferential portion at the upper end of said main tubular body portion being a smooth continuation of said main tubular body portion,

a sponge applicator for attachment around the neck portion of the tube dispenser for applying to the exterior surface the substance contained in the tube dispenser which has been dispensed through the upper neck portion and through the sponge applicator,

a cover member having an upper portion for covering the sponge applicator and the neck portion of the tube dispenser and a non-threaded lower circumferential portion to provide a friction fit to mate with and seal, to the upper circumferential portion of the main body portion of the tube dispenser,

wherein the cover member is formed of a relatively stiff material and the tube dispenser, and including said tubular main body portion and said upper circumferential portion is formed of a relatively pliable material and wherein said cover member is so dimensioned that the lower circumferential portion of the cover member forms a substantially rigid ring to provide the friction fit to mate with and seal to the outer surface of said relatively pliable upper circumferential portion of the main tubular body portion of the tube dispenser, and

wherein the lower circumferential portion of the cover member has an inner step dimensioned to seat on the upper neck portion adjacent said upper circumferential portion at the upper end of the main tubular body portion and has a lower end forming said rigid ring engagable on the upper circumferential portion of the main tubular body portion to mate and seal with said outer surface of said upper circumferential portion, said inner step providing a stop to limit the insertion of the cover member on the upper circumferential portion of the main tubular body portion of the tube dispenser.

5,577,851

| 5 | 6 |

**2.** The assembly of claim **1** wherein the cover member and the tube dispenser are both formed of plastic material and with the cover member being a hard plastic material and the tube member being a pliable plastic material.

**3.** The assembly of claim **1** wherein the upper neck portion of the tube dispenser has a closed end which must be cut off or punctured in order to release the substance contained in the main body of the tube dispenser.

**4.** The assembly of claim **1** wherein the sponge applicator is attached around the neck portion of the tube dispenser and additionally including complementary threaded portions on an inside surface of the sponge member and an outside surface of the neck portion.

**5.** The assembly of claim **1** additionally including an opening extending through the sponge member to insure the easy passage of the substance contained in the main body of the tube dispenser and with the substance contained in the tube dispenser a paste-like substance.

**6.** The assembly of claim **5** wherein the paste-like substance contained in the tube dispenser is a spackle compound for use in patching holes and cracks in walls and ceilings.

* * * * *

Appendix 3: Page 1 of 4



US00D482962S

(12) **United States Design Patent**    (10) Patent No.:    **US D482,962 S**

Koptis    (45) Date of Patent:    ✱✱    Dec. 2, 2003

(54) **APPLICATOR CAP**

(75) Inventor: **Kurt Koptis**, Yucca Valley, CA (US)

(73) Assignee: **Painters Products Inc.**, Palm Desert, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/170,531**

(22) Filed:    **Nov. 6, 2002**

(51) LOC (7) Cl. ..................................................... **09-01**
(52) U.S. Cl. .................................................. **D9/338**
(58) Field of Search .................. D9/302, 306, 337–338, D9/414, 424, 430–432, 434, 442, 499; 206/277, 361, 527; 220/200, 260, 890; 222/92–93, 106–107, 173, 554, 556; 239/333; 401/130, 139, 49, 126, 208, 220

(56)    **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 1,797,686 | A | * | 3/1931 | Homer | .......................... 222/92 |
| 3,369,543 | A | * | 2/1968 | Ronco | .......................... 604/2 |

| | | | | | |
|---|---|---|---|---|---|
| D320,310 | S | * | 10/1991 | Kuhn | .......................... D4/114 |
| D342,021 | S | * | 12/1993 | Porta | .......................... D9/338 |
| D351,338 | S | * | 10/1994 | Koptis | .......................... D9/302 |
| D414,688 | S | * | 10/1999 | Loeb et al. | .......................... D9/338 |
| 6,126,923 | A | * | 10/2000 | Burke et al. | .......................... 424/49 |

* cited by examiner

*Primary Examiner*—Philip S. Hyder
*Assistant Examiner*—Daniel Bui
(74) *Attorney, Agent, or Firm*—Harvey S. Hertz

(57)    **CLAIM**

The ornamental design for an applicator cap, as shown and described.

**DESCRIPTION**

FIG. 1 is a front elevational view of an applicator cap showing my new design;
FIG. 2 is a left side view thereof;
FIG. 3 is a rear view thereof;
FIG. 4 is a right side view thereof;
FIG. 5 is a top plan view thereof; and,
FIG. 6 is a bottom plan view thereof.

**1 Claim, 3 Drawing Sheets**




U.S. Patent          Dec. 2, 2003          Sheet 1 of 3          US D482,962 S

*FIG. 1*



*FIG. 2*



**U.S. Patent**        Dec. 2, 2003        Sheet 2 of 3        US D482,962 S

*FIG. 4*





*FIG. 3*

Appendix 3: Page 4 of 4

**U.S. Patent**      Dec. 2, 2003      Sheet 3 of 3      US D482,962 S





FIG. 5



FIG. 6

EXHIBIT _____ A _____

PAGE _____ 4 _____ OF _____ 4 _____